UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY HOATH,

    Petitioner,

v.

JEREMY HOWARD,[1]

    Respondent.

Case No. 19-12594
Honorable Laurie J. Michelson

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

In 2017, Jeremy Barron was killed. Authorities believed that Ashley Hoath and Jay Clark plotted to kill Barron because Barron had constantly abused Hoath during their relationship. After being charged in state court with "open" murder, Hoath ultimately chose to plead guilty to second-degree murder. She was sentenced to a minimum of 25 years in prison—10 years more than the guideline for her minimum sentence. Hoath then sought to withdraw her plea: she argued that her choice to plead guilty was not a fully informed choice. In particular, prior to her plea, Hoath was never informed that if she went to trial, a jury might convict her of manslaughter, a lesser-included offense to murder. The state trial court denied the motion to withdraw her plea, and the state appellate courts did not grant leave to appeal.

---

[1] The caption is amended to reflect the proper respondent in this case, the warden of the prison where Hoath is currently incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rules Governing § 2254 Case, Rule 2(a).

So Hoath turns to federal court via a petition for a writ of habeas corpus. Her primary claim is that without knowing about the possibility of a manslaughter conviction, her plea was not intelligent, knowing, and voluntary. For the reasons that follow, the Court will not grant a writ.

## A.

In 2017, authorities discovered Jeremy Barron's body in the woods of Hillsdale County, Michigan. (PageID.117–118.)[2] After some investigation, the authorities arrested Ashley Hoath and Jay Clark for Barron's death. (PageID.87, 98, 119.) Hoath faced charges of "open" murder, which includes the possibility of a first-degree-murder conviction, and conspiracy to commit murder. (ECF No. 8-2, PageID.154–155.)

Prior to trial, Hoath attempted to suppress her confession. (*See* ECF No. 8-3, PageID.160.) During the police investigation, Hoath had undergone about four hours of questioning in preparation for a polygraph test and then took the test itself. (*See* PageID.174.) After the test, the detective told Hoath that she had "failed miserably" and that "[he] knew she . . . had planned the death." (PageID.185–186, 212.) The detective and Hoath then began a discussion. At the suppression hearing, Hoath testified, "I told [the detective] at least thirty times that what he was saying was not right. . . . I just wanted it to be over [with] so I finally just agreed with whatever he said." (PageID.213.) When asked if she had told the detective that she and Clark

---

[2] Unless otherwise indicated, all record citations are to the Rule 5 materials, ECF No. 8.

2

planned to kill Barron, Hoath explained, "Over and over again, I said, 'No.' . . . At the very end when I was just agreeing to get out of there, [I said] yes. I was exhausted and tired of arguing with him." (PageID.216.) The court denied the motion to suppress, finding the detective's account "much more accurate and truthful than that of Ms. Hoath." (PageID.228.)

Ultimately, Hoath decided to plead guilty. Under the plea deal, the prosecution agreed to dismiss the open murder and conspiracy charges if Hoath agreed to plead guilty to second-degree murder and testify at Clark's trial. (PageID.245.) (Hoath never did testify at Clark's trial; she instead tried to withdraw her plea when she took the stand. *See People v. Clark*, 948 N.W.2d 604, 617 (Mich. Ct. App. 2019).)

Before accepting Hoath's guilty plea, the trial court engaged in thorough questioning to ensure that Hoath understood the charges and penalties she was facing and that she was giving up her trial-related constitutional rights by pleading guilty. (PageID.236–246.)

The trial court also established an adequate factual basis for the guilty plea.

During the colloquy, Hoath told the court that Barron had been extremely abusive to her, "physically, sexually[,] . . . [e]motionally[,] [and] mentally[.]" (PageID.247.) She explained, "Every time I escaped, he would find me and he would bring me back. Eventually, my kids were taken because of the domestic violence in this situation." (*Id.*)

Hoath also informed the court that she met Clark in a bar in November 2016. (PageID.248.) According to Hoath, "I had told [Clark], . . . 'The only way I'll ever . . .

3

be able to get rid of Jeremy [Barron] is if I kill him.' . . . [Clark] said, 'That can happen.'" (PageID.248.)

Hoath then preceded to tell the court that after Barron had gone to jail on sexual-assault charges (not against Hoath), Clark had given her a handgun. (PageID.249.) Hoath explained that she and Barron's mother bailed Barron out of jail: "I thought he would [be] better. . . . He was not better. He was still very abusive. He became physically abusive one night and then I did grab the gun [that Clark gave me], but I couldn't shoot him. I managed to get away." (PageID.250.)

Hoath then told the trial court about the plan to kill Barron. Hoath recalled telling Clark about Barron's latest abuse and that she could not follow through on killing Barron. (PageID.250.) Clark told Hoath that if he saw Barron once, he would shoot him. (PageID.250.) During her colloquy, Hoath admitted that, at that point, she and Clark decided to kill Barron. (PageID.251.) Hoath further admitted that she and Clark planned to kill Barron to stop the abuse. (PageID.253.)

An opportunity arose on February 8, 2017, when Barron lost his phone and Clark "offered to give him a ride to help him find it." (PageID.250.) Hoath informed the court that she knew Clark was going to kill Barron, that "we weren't gonna go find the phone." (PageID.252.) During her colloquy, Hoath explained that Clark drove, she was in the passenger seat, and Barron was in the back. (PageID.254.) After some time, she saw a gun in Clark's lap. (PageID.255.) Clark said, "[g]et her done[?]," and Hoath responded, "[y]eah, get 'er done." (PageID.255–56.) According to Hoath, Clark then turned around and shot Barron four times. (PageID.256.)

4

During the plea colloquy, Hoath admitted that Barron posed no danger to her at the moment Clark shot Barron. (PageID.261.) Asked by the court whether Hoath was acting in "self-defense or some mitigation," she responded, "No." (*Id.*) The trial court found Hoath's plea was "freely, understandingly, accurately and voluntarily given[.]" (*Id.*)

A few months later, in January 2018, the state trial court sentenced Hoath. Although the court acknowledged that Barron had abused Hoath, the court also stated, "It's not acceptable, miss, under any . . . justification or alleged justification. He posed no problem to you. He was sitting in jail on a [criminal-sexual conduct] charge. He posed no further threat." (PageID.278.) The court added, "I've heard the Clark trial. I listened to the entire proceeding. I learned as a result of that proceeding that there appears to be two shooters shot by two different guns. And then his body was disposed of. And then efforts were made to cover up that murder." (*Id.*) Although Hoath's guidelines were 15 to 25 years in prison, the court sentenced Hoath to a minimum of 25 years and a maximum of 40 years in prison. (PageID.279.)

## B.

Following her sentencing, Hoath, through appellate counsel, filed a motion to withdraw her plea. Hoath argued that her trial counsel had been ineffective by not advising her at the time of her plea that voluntary manslaughter was a lesser-included offense to murder. (*See* PageID.326.) Hoath argued that before her plea, she should have been advised that she had the option of trying to convince a jury that she was only guilty of manslaughter, a "much less serious offense." (*Id.*) Hoath argued

5

that Barron's extensive abuse would have supported a lesser, manslaughter conviction. (*See id.*) In support of her motion, Hoath submitted an affidavit from her trial counsel that stated, "at no time during my representation of Ashley Hoath did I discuss with her the lesser offense of Voluntary Manslaughter and how it might apply in her case." (ECF No. 1, PageID.16; ECF No. 8-7, PageID.326, 329 (referencing affidavit).)

The trial court denied Hoath's request to withdraw her plea. The court commented that Clark had in fact gone to trial and was convicted of first-degree murder. (PageID.328.) And apparently relying on evidence from Clark's trial, the court stated that "[Barron] was executed by two shooters" and "carried to the drop site." (PageID.338.) In the midst of reading back Hoath's plea colloquy the Court "digress[ed] a little": "[T]his isn't manslaughter. This was an outright execution. This wasn't manslaughter in any degree. It doesn't meet the elements of manslaughter." (PageID.334.) The court explained that for the crime of murder to be reduced to manslaughter, Hoath needed to show "emotional excitement to the point that a reasonable person might have acted on impulse without thinking twice from passion instead of judgment" and that she "acted before a reasonable time had passed to calm down and return to reason." (PageID.337–338.) The court concluded, "when the facts don't support the instruction of manslaughter, the Court has a responsibility not to give it. I did not give a manslaughter instruction in the Clark case because the facts did not warrant an instruction on manslaughter nor would it warrant in the Hoath case. So regardless of whether [trial counsel] talked about manslaughter or not, it's

6

inconsequential because it wouldn't apply. Under the facts of this case, it wouldn't have been given." (PageID.339.)

Because Hoath pled guilty, she did not have a right to appeal but instead needed permission to appeal. (*See* PageID.241–242.) She sought permission, arguing that she needed to be "advised of the lesser offense of voluntary manslaughter before her plea to second degree murder could be an understand[ing] waiver of her rights to present a defense based on the lesser offense[.]" (PageID.305.) Hoath argued that her waiver of rights was not knowing because she was "completely unaware of the lesser crime of voluntary manslaughter and how it might fit the facts of [her] case." (PageID.331.) She also argued that she was entitled to effective assistance of counsel during plea negotiations, and she was deprived of that right because counsel did not advise on manslaughter. (PageID.313.)

The state appellate courts did not grant relief. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Hoath*, No. 343918 (Mich. Ct. App. Jun. 29, 2018), *available at* (PageID.301). And the Michigan Supreme Court denied leave "because [it was] not persuaded that the question presented should be reviewed by this Court." *People v. Hoath*, 919 N.W.2d 75 (Mich. 2018).

Hoath subsequently sought a writ of mandamus or complaint for superintending control in the Michigan Court of Appeals for discovery materials she argued would establish her innocence. (PageID.440–443.) Hoath sought, among other things, a transcript of the discussion following the polygraph test and the transcripts

7

from Clark's trial. (PageID.440.) As to the trial transcripts, Hoath argued that some of the statements from Clark's trial were used as facts to sentence her and to deny her motion to withdraw her plea. (PageID.442.) In May 2019, the Michigan Court of Appeals denied her writ-or-complaint (PageID.438), and Hoath did not appeal that denial to the Michigan Supreme Court (PageID.503).

## C.

In September 2019, Hoath turned to federal court for relief. Hoath's petition for a writ of habeas corpus states, "My 14th Amendment right to due process and a fair trial was violated where my plea was based on incomplete information. I was never advised of a possible lesser included offense of voluntary manslaughter, and was denied the request to withdraw my plea." (ECF No. 1, PageID.5.) Hoath attaches an affidavit from her trial counsel, which appears to be the same one submitted to the state trial court in support of her motion to withdraw her plea. (ECF No. 1, PageID.6.) "Also," Hoath says, "evidence has continuously been withheld from me." (ECF No. 1, PageID.5.)

## I.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). To be more specific, if the state courts adjudicated the claim "on the merits," then, under § 2254(d), a petitioner must show that the state court decision was "contrary to, or involved an

8

unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," § 2254(d) "does not apply." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## II.

### A.

The Court begins with Hoath's claim that her guilty plea was not intelligent, knowing, and voluntary. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." (internal quotation marks omitted)). This right stems from (at least) the Due Process Clause of the Fourteenth Amendment. *See Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969); *United States v. Young*, No. 20-6280, 2022 WL 3274167, at *9 (6th Cir. Aug. 11, 2022); *cf. McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Because it is clear that the state trial court considered the merits of this claim, it is also clear that § 2554(d) cabins the Court's consideration of this claim. The only question is which state court opinion or order should be evaluated under § 2254(d). As noted, both the Michigan Supreme Court and the Michigan Court of Appeals denied Hoath leave to appeal in one-line orders. In contrast, at the hearing, the state trial court provided reasoning for its decision to deny Hoath's motion to withdraw her

9

plea. In this scenario, federal habeas courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Although the presumption is rebuttable, the Court has been given no reason to think that the Michigan Court of Appeals' decision or the Michigan Supreme Court's decision rests on different reasoning than the state trial court's. So the Court will decide whether the state trial court's oral opinion complied with § 2554(d).

As discussed, the state trial court essentially reasoned that (1) it had thoroughly questioned Hoath about her willingness to give up trial-related rights (such as the right for a jury to find, beyond a reasonable doubt, that she had murdered Barron) (PageID.329) and (2) that counsel's failure to advise on a possible voluntary manslaughter conviction was harmless because on the facts of the case, the court would not have given a voluntary-manslaughter instruction to the jury (PageID.339). The state court then concluded that Hoath "entered a plea of second degree murder in a known, consensual, intelligent manner." (PageID.339.)

Hoath has not shown that the state court's decision was contrary to or involved an unreasonable application of Supreme Court holdings or that it rests on unreasonable factual determinations. *See* 28 U.S.C. § 2254(d). Supreme Court "decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty." *United States v. Broce*, 488 U.S. 563, 573 (1989). Moreover, "[t]he principal value of counsel to the accused in a

10

criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract." *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973). Multiple considerations, including "the convincing nature of the evidence against the accused" might suggest that a guilty plea is advisable. *Id.* at 268. Hoath cites no U.S. Supreme Court case holding that if a defendant is unaware that she could be convicted at trial of a lesser offense than the one she is pleading guilty to, her plea is not intelligent, knowing, and voluntary. So § 2254(d) bars her claim.

And even assuming that as a general matter, an intelligent, knowing, and voluntary guilty plea to a charge requires that the defendant be aware that she could proceed to trial and be convicted of a lesser charge, the Court would not grant a writ in this particular case. Hoath has directed the Court to no evidence that had she been informed of the possibility of a manslaughter conviction, she would have gone to trial. Granted, Hoath sought to withdraw her plea knowing that if she was successful, the prosecutor could again pursue a first-degree murder charge. (PageID.324.) Arguably, that is some evidence that Hoath was willing to proceed to trial and risk that conviction. On the other hand, Hoath only sought to withdraw her plea after getting a sentence that was likely much longer than she had anticipated (her guidelines were 15 to 25 years, but she received 25 to 40 years).

And in light of the significant risk of going to trial, the Court will not simply presume that Hoath would have selected that option had she been told about the possibility of a manslaughter conviction. First, there was the significant risk of a jury convicting Hoath of first-degree murder. Hoath was not successful in suppressing her

11

post-polygraph confession and the prosecution would have likely introduced the results of the polygraph test, Hoath's confession, and forensic evidence suggesting that there were two shooters. And there was another significant risk of going to trial: the court might not have instructed the jury on manslaughter. In fact, the state court stated, "I did not give a manslaughter instruction in the Clark case because the facts did not warrant an instruction on manslaughter nor would it warrant in the Hoath case." (PageID.339.) Third, consider the sentences that Hoath faced. Her guidelines for second-degree murder were 15 to 25 years in prison, whereas a first-degree murder conviction would have resulted in mandatory life without parole. So pleading was attractive because the expected sentence was much shorter. And seeking a jury conviction of only manslaughter could have resulted in a 15-year sentence in the worst case, *see* Mich. Comp. Laws § 750.321, making that result not significantly more attractive than pleading to second-degree murder with a guideline minimum of 15 years. In short, had counsel advised Hoath prior to her plea that she had the option to go to trial and try to get nothing more than manslaughter, it is fair to presume that counsel would have also advised Hoath that there was a significant chance of being convicted of first-degree murder (and spending the rest of her life in prison), that the court might not even instruct on manslaughter, and that even a manslaughter conviction could, in the worst case, result in a 15-year sentence. With that collective advice, it is doubtful that Hoath would have ventured to trial.

In short, Hoath is not entitled to habeas corpus relief on her claim that her plea was not intelligent, knowing, and voluntary.

## B.

In the Michigan Court of Appeals, Hoath asserted that her trial counsel was constitutionally ineffective by failing to advise her that a jury might convict her of manslaughter (and not murder) if she proceeded to trial. (PageID.313–314.) That claim is not expressly part of Hoath's petition. But given the nature of Hoath's claim for a writ of habeas corpus, an ineffective-assistance-of-counsel claim lurks in the petition. Assuming that claim is part of the petition, it does not warrant a writ.

To prove ineffective assistance of counsel, a petitioner must show constitutionally deficient performance and prejudice. "To satisfy the prejudice requirement in the context of guilty pleas, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial.'" *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

Hoath has not shown prejudice. Even if counsel had advised Hoath that if she proceeded to trial, a jury might convict her of only manslaughter, there is not a reasonable probability that Hoath would have turned down the plea deal, proceeded to trial, and been convicted of something less than second-degree murder (or, if convicted of second-degree murder following trial, sentenced to a shorter term of

13

imprisonment). At trial, the prosecution would have sought a first-degree murder conviction armed with the results of the polygraph test, Hoath's confession, and forensic evidence suggesting that there were two shooters. And while they are not similarly situated given Barron's abuse, the prosecution did secure a first-degree murder conviction against Clark. Further, any attempt to establish a not-more-than-manslaughter defense at trial came with the substantial risk that the trial judge would not have even instructed on manslaughter. So Hoath has not shown that if counsel had given her the advice about manslaughter before she pled guilty, there is a reasonable probability that (1) she would have elected to not plead guilty and go to trial and (2) the jury would have acquitted her or convicted her of something less than second-degree murder. *See Shimel*, 838 F.3d at 698 ("[I]n determining whether a defendant has shown prejudice, a court must predict whether correction of the deficient performance might have enabled the defendant to succeed at trial." (internal quotation marks omitted)). Nor has Hoath shown that if she went to trial and was convicted of second-degree murder, there is a reasonable probability that the judge would have given her less prison time based on the evidence presented at trial. Accordingly, Hoath has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

## C.

Finally, Hoath says that "evidence has continuously been withheld from me." (ECF No. 1, PageID.5.) In her writ of mandamus or complaint for superintending

14

control, Hoath asked for phone records, a transcription of her post-polygraph discussion with the detective, the transcripts from Clark's trial, her trial attorney's notes, and records relating to how often and for how long her trial attorney visited her in jail. (PageID.440.) Hoath argued that some of this should be produced because the trial judge used facts from Clark's trial during sentencing and to deny her motion to withdraw her plea. (PageID.442.)[3]

This claim is unexhausted. Although Hoath filed a writ-or-complaint that presented the issue, it appears that she did not appeal the Michigan Court of Appeals' dismissal of that filing to the state supreme court. (PageID.503.) So Hoath failed to exhaust the issue. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). "And federal courts avoid deciding unexhausted claims unless there are 'unusual' or 'exceptional' circumstances." *Phillips v. White*, 851 F.3d 567, 576 (6th Cir. 2017).

In addition, Hoath failed to present any supporting facts for this argument, as required by Rule 2(c) of the Rules Governing § 2254 Cases. Nor does she explain why her claim should entitle her to habeas relief. It is not "sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (citing *McPherson*

---

[3] This statement is not adequate to make a claim based on *Alleyne*. *Cf. Alleyne v. United States*, 570 U.S. 99, 114–15 (2013) ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."); *People v. Lockridge*, 870 N.W.2d 502, 511 (Mich. 2015) ("[T]o the extent that [offense variables] scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e., the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment."). Moreover, any such claim would need to be first presented to the state trial and appellate courts.

15

*v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997)). Hoath has failed to establish she is entitled to habeas relief on her claim of withheld evidence.

### III.

For the reasons given, the Court DENIES Hoath's petition for habeas corpus. The Court does not believe a certificate of appealability should issue and will, by separate order, deny a certificate. A judgment will enter.

SO ORDERED.

Dated: September 12, 2022

                                             s/Laurie J. Michelson
                                             LAURIE J. MICHELSON
                                             UNITED STATES DISTRICT JUDGE